**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0331-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ANTOINE J. MARTIN,
a/k/a BROOKLYN MARTIN,

    Defendant-Appellant.

_____

Submitted February 13, 2025 – Decided March 21, 2025

Before Judges Mawla and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 14-12-1340.

Jennifer N. Sellitti, Public Defender, attorney for appellant (David A. Gies, Designated Counsel, on the briefs).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Nancy A. Hulett, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A jury convicted defendant Antoine J. Martin of two counts of first-degree robbery, N.J.S.A. 2C:15-1; second-degree burglary, N.J.S.A. 2C:18-2; two counts of false imprisonment, N.J.S.A. 2C:13-3; second-degree theft by extortion, N.J.S.A. 2C:20-5; and fourth-degree hindering, N.J.S.A. 2C:29-3. On direct appeal, we affirmed defendant's conviction and remanded for resentencing, State v. Martin, No. A-1224-17 (App. Div. May 28, 2019), and our Supreme Court denied his petition for certification, State v. Martin, 240 N.J. 141 (2019).

Defendant appeals from an August 4, 2023 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. He claims his trial counsel provided ineffective assistance by failing to call a co-defendant as a witness and had a conflict of interest because he also represented the grandson of the State's material witness in a separate criminal matter. Unpersuaded by these arguments, we affirm.

I.

The relevant facts are taken primarily from our prior opinion. Defendant, Brooke Hoffman, and Robert Peterson drove to the home of Clara and Steven Lawrence intending to rob the couple. The Lawrences are the grandparents of the father of Hoffman's child.

A-0331-23

Peterson testified at trial that Hoffman suggested on multiple occasions that he help her rob the Lawrences. Peterson and Hoffman called defendant, who picked them up in his car. Peterson and Hoffman agreed to pay defendant fifty dollars to fill up his car with gas. Defendant transported Peterson and Hoffman to the Lawrences' home where they encountered Clara and Steven.[1]

Clara testified defendant entered her home and Peterson held her to a chair in the kitchen while Hoffman and defendant searched other parts of the house for money. Defendant and Hoffman frequently returned to the kitchen demanding to know where the Lawrences kept their money. Clara recounted defendant grabbed an antique clock from an adjoining room and smashed it to scare them while asking where they kept their money. After breaking the clock, defendant took a knife from the kitchen and gestured with it at Steven while walking towards him and demanding the money.

Defendant and Hoffman found a gun under a mattress in a bedroom and brought it to the kitchen. Defendant pointed the gun at the Lawrences and continued to demand the location of money, while threatening, "things are gonna get bloody in here." Hoffman found stun guns in the home and brought those

---

[1] We utilize the victims' first names because they share a common surname. We intend no disrespect.

A-0331-23

into the kitchen, where Peterson put down the knife he had been holding and took possession of a stun gun. At this point, Clara grabbed the knife and attempted to escape. Peterson chased after her, causing her to fall. He hovered over her and threatened her with the stun gun until he realized defendant and Hoffman had abandoned him, causing Peterson to flee out the back door. Steven then went next door to call 9-1-1. South Plainfield police quickly responded to the call and located Peterson in a nearby salon. Peterson surrendered and described defendant's red Cadillac to police.[2]

Police located defendant's car nearby and went to the home address listed on the registration. When police arrived at the home, defendant agreed to open his apartment door, and his wife consented to a search of the apartment and the Cadillac. Police found Hoffman hiding in the closet with various items belonging to the Lawrences in her possession, including: the .22 caliber handgun; jewelry; Steven's Korean War dog tags; military medals; and foreign currency. Police also found a jewelry box containing a receipt from Steven dated June 22, 1977.

---

[2] He later testified as the State's witness against defendant at trial.

A-0331-23

Defendant waived his <u>Miranda</u>[3] rights by signing the consent form and gave two statements to police, which were recorded and played for the jury, with some redactions. In his statements, defendant maintained he had not known or participated in the robbery but simply agreed to give Peterson and Hoffman a ride in exchange for fifty dollars of gas money. Defendant said he followed Peterson and Hoffman to the back door of the house and described what his co-defendants did during the robbery, which was consistent with both the Lawrences' and Peterson's accounts. He maintained he did not participate in the robbery. At trial, defendant testified his second statement to police was false and included details from Peterson.

A Middlesex County grand jury indicted defendant, Hoffman, and Peterson. Peterson entered into a plea agreement and pleaded guilty to one count of first-degree robbery and testified against defendant. Defendant and Hoffman were tried separately. Defendant was convicted and sentenced to an aggregate prison term of twenty-one and one-half years with seventeen years of parole ineligibility.

On March 12, 2021, pursuant to our remand of defendant's sentence, the court resentenced him to: twenty years on both counts of first-degree robbery,

---

[3] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2; ten-years on his second-degree burglary count, subject to NERA; eighteen months in prison on his fourth-degree hindering count; and six months in prison on his two counts of false imprisonment.

Defendant filed a timely PCR petition, which was initially dismissed without prejudice. He refiled his petition with several supporting certifications, including a sworn certification from Hoffman stating that when she left the Lawrences' home, she saw defendant inside the car they had driven to the home. However, Hoffman's certification is written in the style of a report from an investigating officer, and her signature is on a separate, undated page.

The court denied defendant's PCR petition. It first addressed defendant's argument trial counsel had a conflict of interest stemming from his representation of defendant and the Lawrences' grandson in a separate matter. Defendant's trial counsel informed the court he and his supervisors at the Office of the Public Defender "did not see this dual representation as a conflict."

The court concluded the representation of the Lawrences' grandson was remote and disqualification was not required under the circumstances. The court had considered the issue at the time of the trial and concluded no conflict existed. The claim was also barred under Rule 3:22-4 and Rule 3:22-5.

As to the defendant's second claim—trial counsel's alleged failure to call witnesses—the court concluded defendant did not demonstrate prejudice in trial counsel's decision not to call Hoffman or a character witness, and therefore did not meet his burden under Strickland v. Washington, 466 U.S. 668, 689 (1984). The court reasoned, defendant did not offer any strategic analysis "to his asserted position" and "[l]acking any . . . substantive information, [defendant] fails to demonstrate a reasonable probability that, but for trial counsel calling such individuals, the result of that trial would have been different."  Further, trial counsel's strategic decisions were successful as defendant was initially indicted on twenty counts, but two counts were dismissed prior to trial by counsel's motion, and defendant was only convicted of six of the remaining counts.

Defendant presents the following arguments for our consideration.

POINT I

THE PCR JUDGE ERRED WHERE HE DENIED DEFENDANT'S INEFFECTIVENESS CLAIM BY REJECTING THE PROFFERED TESTIMONY OF AN ABSENT WITNESS WITHOUT EVALUATING ITS CREDIBILITY ON DIRECT AND CROSS-EXAMINATION.

POINT II

THE PCR JUDGE ERRED WHERE HE DISMISSED

7

DEFENDANT'S CONFLICT-OF-INTEREST CLAIM ON THE GROUNDS IT WAS PROCEDURALLY BARRED.

POINT III

APPELLATE COUNSEL ERRED WHERE SHE DID NOT RAISE THE CONFLICT-OF-INTEREST CLAIM ON DIRECT APPEAL.

II.

We review the legal conclusions of a PCR court de novo. State v. Harris, 181 N.J. 391, 419 (2004). The de novo standard of review also applies to mixed questions of fact and law. Id. at 420. Where, as here, an evidentiary hearing has not been held, it is within our authority "to conduct a de novo review of both the factual findings and legal conclusions of the PCR court." Id. at 421.

In Strickland, the United States Supreme Court established a two-part standard to determine a claim that a defendant is entitled to PCR because the defendant had been deprived of the effective assistance of counsel. 466 U.S. at 687. Under Strickland's first prong, a petitioner must show counsel's performance was deficient by demonstrating counsel's handling of the matter "fell below an objective standard of reasonableness" and that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." Id. at 687-88.

8

Under the "'second, and far more difficult prong of the' Strickland standard," State v. Gideon, 244 N.J. 538, 550 (2021) (quoting State v. Preciose, 129 N.J. 451, 463 (1992)), a defendant "must show that the deficient performance prejudiced the defense," State v. O'Neil, 219 N.J. 598, 611 (2014) (quoting Strickland, 466 U.S. at 687). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Gideon, 244 N.J. at 550-51 (alteration in original) (quoting Strickland, 466 U.S. at 694).

Proof of prejudice under Strickland's second prong "is an exacting standard." Id. at 551 (quoting State v. Allegro, 193 N.J. 352, 367 (2008)). A defendant seeking PCR "must 'affirmatively prove prejudice'" to satisfy the second prong of the Strickland standard. Ibid. (quoting Strickland, 466 U.S. at 693). A failure to satisfy either prong requires the denial of a PCR petition founded on an ineffective assistance of counsel claim. Strickland, 466 U.S. at 700. "[C]ourts are permitted leeway to choose to examine first whether a defendant has been prejudiced, and if not, to dismiss the claim without

9

determining whether counsel's performance was constitutionally deficient." State v. Gaitan, 209 N.J. 339, 350 (2012) (internal citation omitted).

"[T]o establish a prima facie claim, a [defendant] must do more than make bald assertions that [they were] denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). PCR petitions must be "accompanied by an affidavit or certification by defendant, or by others, setting forth with particularity," State v. Jones, 219 N.J. 298, 312 (2014), "facts sufficient to demonstrate counsel's alleged substandard performance." Cummings, 321 N.J. Super. at 170. "[F]actual assertions in a [PCR petition must] be made by affidavit or certification in order to secure an evidentiary hearing." Jones, 219 N.J. at 312 (citing R. 3:22-10(c)).

## III.

We first address defendant's argument the PCR court erred in failing to find ineffective assistance of counsel based on trial counsel's failure to call Hoffman to testify at trial. Particularly, defendant argues the court "rejected the veracity of Hoffman's certification without evaluating her credibility on direct or cross-examination while relying on the 'documentary and testimonial evidence introduced at trial,'" and "it is not Hoffman's certification that is inconsistent; it is Peterson's credibility, the State's witness, that is challenged."

Defendant further contends, the State "did not provide an affidavit from defendant's trial attorney explaining his reasons for not calling Hoffman to testify," and he has demonstrated a "reasonable likelihood he would succeed in establishing prejudice."

Examining defendant's contentions under <u>Strickland</u>'s second prong, we remain unpersuaded Hoffman's testimony at trial—assuming it mirrored her certification—would have altered the jury's verdict. Hoffman's certification states, "the person that went inside the Lawrence[s'] house could not have been [defendant]," while also containing Hoffman's admission that she was "out of it" and "so emotional" that she did not notice who entered the house with her and Peterson. The certification further states defendant was in the car as she exited the victims' home.

To establish that trial counsel's failure to call Hoffman prejudiced defendant, he must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Hoffman's certification establishes that defendant used his vehicle to drive her and Peterson to the Lawrences and that he was waiting in the car to drive them away from the scene. Critically, however, Hoffman also states that she was "out of it" and "so emotional" that she did not notice who entered the

A-0331-23

house with her and Peterson.  At best, Hoffman's recollection of defendant's whereabouts at the time of the robbery was imprecise, and the statements in her certification are inconsistent regarding whether defendant had entered the home or remained in the getaway car during the robbery.

Defendant therefore cannot demonstrate the requisite prejudice based on Hoffman's certification because he cannot establish that her testimony, if presented at trial, would have led to his acquittal or a better result.  Thus, he has failed to demonstrate counsel's representation of him was ineffective.

We also reject defendant's claim the State was obliged to present evidence, including any affidavits from trial counsel or any other witness.  It is defendant, not the State, who bears the burden to prove ineffective assistance of counsel by a preponderance of the evidence.  Preciose, 129 N.J. at 459.

We similarly reject defendant's contention appellate counsel provided ineffective assistance by failing to raise on appeal the issues of:  prosecutorial misconduct; defense counsel's failure to call a character witness; and counsel's failure to call Hoffman.  There is no support for defendant's argument a character witness would have aided his position at trial in the face of the evidence against him.

Appellate counsel is not required to raise every issue on appeal. State v. Morrison, 215 N.J. Super. 540, 549 (App. Div. 1987) (citing Jones v. Barnes, 463 U.S. 745, 754 (1983)); see also State v. Gaither, 396 N.J. Super. 508, 516 (App. Div. 2007) (holding that appellate counsel is not "required to advance every claim insisted upon by a client on appeal"). Defendant has failed to set forth with particularity "facts sufficient to demonstrate counsel's alleged substandard performance." Cummings, 321 N.J. Super. at 170. Defendant may not rely on "bald assertions that he was denied the effective assistance of counsel." State v. Peoples, 446 N.J. Super. 245, 254 (App. Div. 2016) (quoting Cummings, 321 N.J. Super. at 170).

Regarding defendant's claim the PCR court erred by dismissing his conflict-of-interest claim, defendant admits this claim was not raised on appeal. Moreover, the PCR court found no conflict existed because defense counsel's representation of the victim's grandson was a separate and unrelated proceeding, with no relation or bearing on his representation in defendant's case. In reviewing the trial record, the PCR court noted trial counsel had raised this issue on the eve of trial when he first discovered he had another client who was related to the victims in defendant's case. The PCR court examined the issue under the Rules of Professional Conduct and the trial judge previously concluded the

13

representation of the other litigant "was being conducted in a remote, separate, and unrelated matter, and that defense counsel did not have information that could have potentially been used against a witness or this defendant."

Based on this record, we see no basis to conclude the PCR court erred in rejecting defendant's argument, which had been previously found to be without merit. Counsel's representation can hardly be deemed ineffective when he brought an issue before the court, which the court considered and decided based on the applicable Court Rules. Appellate counsel did not have to raise this meritless argument on appeal. See State v. O'Neal, 190 N.J. 601, 619 (2007) (stating the failure to file a meritless motion is not ineffective assistance of counsel).

Defendant failed to establish a prima facie case under the Strickland standard. For these reasons, the PCR court properly denied defendant's request for an evidentiary hearing. Preciose, 129 N.J. at 462-63.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

14

A-0331-23